ORDER (Denial of Election Challenge)
TODD R. MATHA, Associate Judge.
INTRODUCTION
The Court must determine whether to overturn the results of the January 12, 2002 Special Redistricting Election. In challenges to the election results, the plaintiffs allege that the Ho-Chunk Nation Election Board [hereinafter Election Board] provided insufficient, notice to the electorate. The Court concurs with this allegation, but finds that the plaintiffs have not fully satisfied their burden of proof as articulated in the Amended s Restated Ho-Chunk Nation Election Ordinance [hereinafter Election Ordinance], Art. XIV, § 14.01(b).
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail in its Order (Preliminary Determinations), CV 02-08, 10 (HCN Tr. Ct., Feb. 4, 2002). For purposes of this decision, the Court notes that the plaintiff, Demetrio D. Abangan, submitted the Plaintiffs List of Exhibits on February 6, 2002. The Court convened the Trial on February 7, 2002 at 9:00 A.M. *315 CST, and continued the proceeding the following day at 1:00 P.M. CST. The following parties appeared at the Trial: Demetrio D. Abangan, plaintiff; Attorney James Ritland, plaintiffs counsel; Stewart J. Miller and Brenda Neff, plaintiffs; Ejection Board Chairperson Vaughn Pettibone, defendant; and Ho-Chunk Nation Department of Justice [hereinafter DO J] Attorneys Michael P. Murphy and Wendi A. Huling, defendant’s counsel.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Article V—Legislature
Sec. 4. Redistrictmg or Reapportionment. The Legislature shall have the power to redistrict or reappoi’tion including changing, establishing, or discontinuing Districts. The Legislature shall maintain an accurate census for the purposes of redistricting or reapportionment. The Legislature shall redistrict and reapportion at least once every five (5) years beginning in 1995, in pursuit of one-person/one-vote representation. The Legislature shall exercise this power only by submitting a final proposal to the vote of the people by Special Election which shall be binding and which shall not be reversible by the General Council. Any redistricting or reapportionment shall be completed at least six (6) months prior to the next election, and notice shall be provided to the voters.
Article VIII—Elections
Section 2. Special Elections. Special Elections shall be held when called for by the General Council, the Legislature, or by this Constitution or appropriate ordinances. In ail Special Elections, notice shall be provided to the voters.
Section. 7. Challenges of Election Re-suits. Any member of the Ho-Chunk Nation may challenge the results of any election by filing suit in Tribal Court within ten (10) days after the Election Board certifies the election results. The Tribal Court shall hear and decide a challenge to any election within twenty (20) days after the challenge is filed in Tribal Court.
AMENDED AND RESTATED HO-CHUNK NATION ELECTION ORDINANCE
Article III—Election Board
Sec. 3.02. Duties and Responsibilities of the Election Board.
(a) Duties. The Election Board shall:
(1) conduct all General and Special Elections in a fair and impartial manner; and,
Article VI—Notice of Election
Sec. 6.01. Notice of Election.
(a) The Election Board shall post an Official Notice of Election in the ten (10) polling places and any other appropriate locations at least ninety (90) days before the election, except that a Notice of Special Election shall be published as early as practical before a Special Election but not less than 15 days before such Special Election.
(b) The Election Board shall use the Official Notice of Election Form A-l contained in the Appendix of this Ordinance. The form shall include the following information:
(1) whether the election is a General or Special Election, and if a Special Election, the issue(s) to be decided in. the Special Election; and,
(2) the date of the election; and,
*316 (3) the candidate filing deadline, if any; and,
(4) the locations of the Polling Places; and,
(5) the absentee voting procedures and deadlines; and,
(6) other important information as determined by the Election Board consistent with this Ordinance.
Article VTII—Eligible Voters
Sec. 8.03. List of Eligible Voters.
(a)The Enrollment Office shall prepare and maintain a master list of all Members age eighteen (18) and over by District base upon physical address appearing in Enrollment Records. The Election Board shall compile a list of eligible voters from each District based upon Enrollment Records. The Office of Tribal Enrollment and Election Board shall add the names of eligible persons who have reached or who will reach the age of eighteen (18) by election day to the list of eligible voters.
Article X—Absentee Voting
Sec. 10.01. Absentee Voting Permitted.
(a) Any eligible voter shall be entitled to vote by Absentee Ballot by submitting a written request to the Election Board by 4:00 p.m. Central Standard or Daylight Time, as applicable, of the third day before the day to the election. Requests by facsimile (FAX) shall be allowed. The Election Board shall not accept a completed Absentee Ballot from any person who has not submitted a written request for an Absentee Ballot.
(b) The Election Board shall use diligent efforts to mail out Absentee Ballots in a timely manner to each eligible voter who has requested an Absentee Ballot. Since the Election Board cannot control the timing of requests or the mail-out and receipt of Absentee Ballots, the Election Board shall not be held responsible for Absentee Ballots which are received beyond the deadline for receipt of Absentee Ballots.
(c)All Absentee Ballots must be received by the Election Board no later than the close of polls on Election Day.
Sec. 10.02. Procedures for Voting by Absentee Ballot.
(b) The voter shall vote by marking the Absentee Ballot. The voter shall seal the ballot in the envelope marked “ABSENTEE BALLOT” which, in turn, must be sealed in the outer envelope. The voter shall print and sign the certificate on the outer envelope. The voter’s signature on the outer envelope must be notarized to be valid.
(c) The voter may return a completed Absentee Ballot to the Election Board by causing the Absentee Ballot to be delivered in-person or through the U.S. mail. If mailed, the Absentee Ballot must be actually received by the Election Board office no later than the close of polls on Election Day.
Article XIV—Challenges to the Election Results
Sec. 14.01. Challenges to the Election Results.
(b) The person challenging the election results shall prove by clear and convincing evidence that the Election Board violated the Election Ordinance or otherwise conducted an un *317 fair election, and that the outcome of the election would have been different but for the violation. If the Court finds the challenge is frivolous or wholly without merit, the party challenging shall be assessed costs of the action in the amount equal to one hundred dollars ($100.00).
ELECTION CHALLENGE RULES (Adopted Jan. 19, 2002)
Rule 7. The final judgment or order of the Trial Court may be appealed to the HCN Supreme Court. The Notice of Appeal shall be filed within three (3) days of entry of the final judgment or order. The Notice of Appeal must state a basis for appeal based upon the laws and/or Constitution of the Ho-Chunk Nation. An Affidavit of Service and a thirty-five dollar ($35.00) filing fee must accompany the Notice of Appeal.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 61. Appeals.
Any final Judgement or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal, All subsequent actions of a final Judgement or Trial Court Order must follow the HCN Rules of Appellate Procedure.
FINDINGS OF FACT
1. The parties received proper notice of the February 7-8, 2002 Trial See Order (Preliminary Determinations) at 10.
2. On June 15, 2001, Hocak Worak Editor Paul Arnetz explained that the deadline for newsletter submissions falls on the 1st and 3rd Wednesdays in any given month. See In re Contempt of the Ho-Chunk Nation Dep’t of Justice, CV 00-104A (Show Cause Hearing Log of Proceedings Electronically Recorded [hereinafter LPER ] at 7, June 15, 2001,11:38:21 CST).
3. On November 15, 2001, the Court required the Election Board to submit a draft Official Notice of Election for the January 12, 2002 Special Redistricting Election to the Court. The Court identified the few substantive differences between the expected notice and the prior May 29, 2001 Official Notice of Election (i.e., applicable timeline, map substitution and judicial website address change). See Chloris Lowe Jr. et al. v. Ho-Chunk Nation Legislature Members Elliot, Garvin et al., CV 00-104 (Hearing LPER at 2, Nov. 15, 2001, 09:19:05 CST).
4. On November 15, 2001, the defendants recommended Saturday, January 12, 2002 as the date for the Special Redistrieting Election. Id. at 3, 09:23:55 CST. The defendants also indicated that the Election Board could earliest convene a meeting on Saturday, December 1, 2001 for the purpose of approving an Official Notice of Election. Id. at 5, 09:38:11 CST. The defendants posited that Friday, December 7, 2001 could serve as an artificial deadline for newsletter submission. Id. at 5, 09:38:28 CST.
5. On November 15, 2001, the Court advised the defendants to alert the Hocak Worak in order to reserve space for the Official Notice of Election, Id. at 3, 09:25:19 CST. The Court emphasized that the Official Notice of Election must appear in the newsletter “a meaningful period of time prior to the election.” Id, at 3, 09:24:34 CST.
6. On November 19, 2001, the Court memorialized, in part, the above discussion, ordering that the “Election Board ... hold the Third Special Redistricting *318 Election on or before January 12, 2002.’ Lowe, Jr., CV 00-104 (HCN Tr. Ct., Nov. 19, 2001) at 7. The Court additionally directed the “Election Board [to] submit a draft notice and ballot for review on or before December 7, 2001 prior to posting and printing for assurances of clarity.” id. Finally, the Court required the “Election Board [to] publish the notice within the Hocak Worak within a sufficient period of time to allow dispersal of the newsletter to the membership prior to the Special Election.” Id.
7. On Saturday, December 1, 2001, the Election Board convened its meeting, and approved the substantive contents of the December 12, 2001 Official Notice of Election. Election Board Meeting Minutes, Dec. 1, 2001 at 2. Election Board staff consequently perfected the format of the Official Notice of Election, and provided a floppy disc with the final version to The Print Shop of Black River Falls, WI for printing the posted copies. Demetrio D. Abangan et al. v. Ho-Chunk Nation Election Bd., CV 02-08, 10 (Trial LPER at 36, Jan. 7,2002, 02:23:43 CST).
8. On Wednesday, December 5, 2001, the Hocak Worak received its final day of timely submissions for inclusion in the Wednesday, December 12, 2001 issue of the newsletter. The Editor Paul Arnetz, however, has permitted submissions beyond the established deadlines in the past, accepting an earlier redistricting/reapportionment notice five (5) days late. Id. at 27, Jan. 7, 2002, 12:37:55 CST.
9. On Thursday, December 6, 2001 at 1:59 P.M. CST, the Election Board filed the Official Notice of Election for judicial review. See Correspondence Re: Redistricting Litigation, CV00-104.
10. On Friday, December 7, 2001, the Court noted its approval of the Official Notice of Election in a teleconference with Election Board representatives.
11. On Tuesday, December 11, 2001, the Hocak Worak presented the final version of the newsletter to Monroe County Publishers in Sparta, WI for printing. Id. at 27, Jan. 7, 2002,12:59:01 CST.
12. On Wednesday, December 12, 2001, Monroe County Publishers provided copies of the Hocak Worak to the U.S. Postal Office in Sparta, WI. The Sparta Post Office delivers the newsletter to tribal addresses in Monroe County. The Sparta Post Office routes newsletters to the Black River Falls Post Office which, in turn, delivers the newsletter to addresses in Jackson County. The Sparta Post Office routes the remaining newsletters to LaCrosse Post Office to complete dispersal. Id. at 29, Jan. 7, 2002, 01:08:58 CST.
13. The Hocak Worak reaches tribal members residing in former District V within an estimated three (3) to five (5) days following publication. Id. at 29, Jan. 7, 2002, 01:10:36 CST; see also Robert A. Mudd v. Ho-Chunk Nation Election Bd., CV 97-140 (HCN Tr. Ct., Oct. 27, 1997) at 8. Hocak Worak Editor Paul Arnetz testified that one (1) tribal member complained of receiving the December 26, 2001 newsletter eight (8) days after publication. Id. at 31, Jan. 7, 2002, 01:27:55 CST.
14. On Friday, December 14, 2001 at 3:30 P.M. CST, the Election Board supplied the Hocak Worak with a copy of the Official Notice of Election for inclusion in the next issue of the newsletter. Id. at 27, Jan. 7, 2002,12:56:14 CST.
15. On Wednesday, December 26, 2001, the Official Notice of Election appeared in the Hocak Worak.
16. Thirty-one (31) enrolled tribal members residing in former District V credibly testified that they would have voted in opposition of Scenario E in the January 12, 2002 Special Redistricting Election *319 if they had received timely notice through the Hocak Worak or other means.[1] Id. at 10, Jan. 8, 2002, 03:16:35 CST. Several witnesses complained of insufficient time to effectively utilize the absentee ballot procedures. Id. at 1, Jan. 8, 2002, 01:17:45 CST et seq.; see also Election Ordinance, Art. X, §§ 10.01, 10.02.
17. The Election Board generates the Eligible Voters List from enrollment information supplied by the Ho-Chunk Nation Office of Tribal Enrollment [hereinafter Enrollment Office]. See Election Okdl nance, Art. VIII, $ 8.03(a). The Hocak Worak obtains its mailing list from the Ho-Chunk Nation Department of Management Information Systems [hereinafter MIS] created, in part, from enrollment information supplied by the Enrollment Office. Abangan, CV 02-08, 10 (Trial LPER at 28, Jan. 7, 2002, 01:03:50 CST). The mailing list, however, does not include approximately 1,000 enrolled voting-age tribal members according to Hocak Worak Editor Paul Arnetz. Id. at 29, Jan. 7, 2002, 01:13:04 CST. Mr. Arnetz could offer no explanation of why the MIS mailing list fails to contain roughly one-quarter of the 4,142 enrolled voting members.[2] Id at 15, Jan. 7, 2002, 10:48:57 CST.
18. The chart below represents a comparative analysis of the voting patterns in the Special Redistricting Elections of October 14, 2000, July 7, 2001 and January 12, 2002.
*320 [[Image here]]
19. The plaintiff, Demetrio D. Aban-gan, acknowledged at Trial that he could not produce sufficient evidence to support several causes of action appearing in the January 23, 2002 Complaint.[3] Id, at 6, Jan. 8, 2002, 02:17:01 CST et seq. Consequently, the Court struck the following claims in light of the recognized inability of the plaintiffs to meet the requisite burden of proof: allegation of discrepancy between Official Notice of Election and ballot (Complaint, Attach, at 1); allegation, albeit implied, that potential errors appeared in the Eligible Voters List (Com *321 plaint, Attach, at 2); allegation of irregularities during the election certification process (Complaint, Attach, at 4); and allegation of irregularities at Minneapolis/St. Paul polling site (Complaint, Attach, at 4). Id.; see also Election Obdi-nance, Art. XIV, § 14.01(b). Likewise, the Court essentially struck the plaintiffs claim regarding the deletion of previously approved language from the ballot (Complaint,, Attach, at 1). See Order (Preliminary Determinations) at 7.
DECISION
The plaintiffs timely challenged the results of the January 12, 2002 Special Redistricting Election, urging that the Court overturn the election on the grounds of defective notice. Constitution of the Ho-Chunk Nation. Art. VIII, § 7. The Election Board is constitutionally required to provide notice of redistricting/reapportionment elections to the eligible voters. Id., Art. V, § 4; Abt. VIII, § 2. In satisfying this constitutional requirement, the Election Board must strive to remain “fair and impartial.” Election Ordinance, Art. Ill, § 3.02(a)(1). The Election Ordinance sets forth notice guidelines as an assurance of fairness and impartiality. Id., Art. VI, § 6.01(a), (b). Most importantly, the Election Board must “publish [the Official Notice of Election ] as early as practical before a Special Election but not less than 15 days before such Special Election.” Id., Art. VI, § 6.01(a).
As concerns the instant case, the Court sought to further ensure the timely receipt of the Official Notice of Election by requiring the “Election Board [to] publish the notice within the Hocak Worak within a sufficient period of time to allow dispersal of the newsletter to the membership prior to the Special Election.” Lowe, Jr., CV 00-104 (HCN Tr. Ct., Nov. .19, 2001) at 7. However, despite these protections, the Election Board once again failed to provide adequate notice to the eligible voters. See In re Contempt of the Ho-Chunk Nation Dep’t of Justice, CV 00-104A (HCN Tr. Ct., June 15, 2001). Quite simply, no reasonable explanation exists for failing to include the Official Notice of Election within the Hocak Worak in the December 12, 2001 edition.
The legal representatives of the Election Board, DOJ, were aware of the Hocak Worak submission deadlines and the fact that the Hocak Worak Editor could accommodate late entries if important in nature. Moreover, the Court advised legal counsel on November 15, 2001 to reserve space in the newsletter for the Official Notice of Election. Yet, the Election Board could not manage to provide a copy of the Official Notice of Election to the Hocak Wo-rak until Friday, December 14, 2001, nearly one (1) month after the Court indicated that the Election Board would need to make only minimal changes to the previously used Official Notice of Election.
The Court could not reasonably foresee that the Election Board would require fourteen (14) days to transmit the Official Notice of Election to the newsletter after its Saturday, December 1, 2001 meeting. Also, the Court cannot comprehend why it took five (5) days to submit a copy of the Official Notice of Election to the Court for review. The Court certainly did not require that The Print Shop first prepare a color copy. See Lowe, Jr., CV 00-104 (HCN Tr! Ct,, Nov. .19, 2001) at 7 (“The Election Board shall submit a draft- notice .... for review .., .’’ (emphasis added)). Regardless, the Election Board could have submitted a copy to the Hocak Worak immediately following . the teleconference approval on Friday, December 7, 2001 (two (2) days after the deadline). The Election Board should have already reserved space in the newsletter for this purpose.
*322 The.defendant--offered no valid reason for the foregoing unfortunate sequence of events. The DOJ, and not the Election Board, appeared during the hearings in which the Court relayed the substantive details distinctly at issue in this case. The DOJ cannot plead ignorance a second time as an excuse for failing to properly publish notices The publishing policies of the Hocak Worak are neither ambiguous nor complex: the deadline for newsletter submissions falls on the 1st and 3rd Wednesdays in any given month. The Court justifiably places the responsibility upon counsel to appreciate and facilitate compliance with judicial directives, and shall continue to do so.
Furthermore, the Court “is well aware there are delays in receipt of mailed newspapers such as the Hocak Worak, which contain important notices about voting.”[4] In re Contempt of the Ho-Chunk Nation Dep’t of Justice, CV 00-104A (HCN Tr. Ct., June 15, 2001) at 7. A proper recognition of this fact should have resulted in a concerted effort to post the notice in the December 12, 2001 Hocak Worak, Instead, the Official Notice of Election appeared in an edition mailed during the holiday season, and one does not need a law degree to reasonably anticipate an increased mailing delay associated with a December 26, 2001 newsletter.
The Court expects the DOJ, rather than its clients, to adequately comprehend the constitutional and statutory implications resulting from certain official actions. The Court ; should feel comfortable setting-broad parameters as opposed to exacting deadlines and instructions. In doing so, the Court minimizes intrusion into the province of its executive and legislative partners.
Regretfully, when the Court encourages an exercise of discretion, the result tends toward clearly unintended literal compliance. The Election Board indeed published the Oficial Notice of Election “not less than 15 days before,” before the January 12, 2002 Special Redistricting Election, but absolutely failed to accomplish publishing “as early as practical.” Election Ordinance, Art. VI, § 6.01(a). The publishing also did not accord with the aforementioned judicial directives concerning timeliness. The Court, therefore, finds the publishing of the Official Notice of Election defective.[5] As previously held, “[t]he Election Board did what was minimally required of them to post the election. However, doing the minimum could have led to the invalidation of this election had the plaintiff[s] been able to show that the outcome of the election would have been different.” Vicki J. Houghton v. HCN Election Bd., CV 97-93 (HCN Tr. Ct., July 21, 1997) at 11.
The plaintiffs have satisfied that portion of the standard which mandates a clear and convincing showing of an Election Ordinance violation or an unfairly conducted election, but have not demon *323 strated by the same burden of proof “that the outcome of the election would hav been different but for the violation.” Election Ordinance, Art. VI, § 6.01(a). Scenario passed by a margin of ninety-three (93) votes, and the plaintiffs have only produced thirty-one (31) individuals capable of testifying that they would have voted against Scenario E if they received proper notice of the Special Redistricting Election. The Court recognizes the significant obstacle erected by the statutory standard, but this corresponds with the justifiable need to settle voter expectations. The Court simply cannot allow the plaintiffs’ challenge to prevail by inference. Other factors may have contributed to the low voter turnout, and the Court cannot indulge in speculation on this point.
Should the plaintiffs be dissatisfied with the level of notice afforded by the Election Board in the January 12, 2002 Special Redistricting Election? Certainly. Have the plaintiffs demonstrated that the election results would have differed if the Election Board had provided meaningful notice? Certainly not. Therefore, the Court denies the election challenges. “Any final Judgement or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court.[6]Ho-Chunk Nation Ridts of Civil Procedure, Rule (51; nee also Election Challenge Rules, Rule 7.
IT IS SO ORDERED this 12th day of February, 2002 by the Ho-Chunk Nation Trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

. The defendant stipulated that eleven (11) of the identified thirty-one (31) tribal members would have testified in the same manner as witnesses appearing at Trial. Id. at 9, Jan. 8, 2002, 03:07:41 CST.

. Apparently, no standard policy exists for determining who receives a newsletter, and the massive discrepancy does not simply arise from the posting of a single Hocak Worak to a household comprised of more than one eligible voter. Based upon the Court's cursory review of the Eligible Voters List and MIS 'mailing list, over 550 members receive an individual copy ot the newsletter despite residing in a household with at least one other newsletter recipient. Also, in former District V, the Court discovered that only around 530 eligible voters received the newsletter out of the first 1,246 eligible voters appearing on the Eligible Voters List (100 of 166 pages examined; inclusive of single residential postings). Furthermore, the U.S. Post Office returns roughly twenty-live (25) to fifty (50) copies of each publication of the Hocak Worak.

. The plaintiffs, Stewart I. Miller and Brenda Neff, earlier conceded that the causes of action appearing in their January 23, 2002 Notice of Challenge to the Election Held on January 12, 2002 and Complaint for Declaratory and Injunctive Relief did not sufficiently differ from the allegations raised by Demetrio D. Abangan. Id. at 21, Jan. 7, 2002, 11:37:02 CST. And, while the former plaintiffs did not designate Attorney James Ritland as legal counsel they relied entirely upon Attorney Rit-land to present the case-in-chief at Trial.

. Moreover, the Court has presumed that the Hocak Worak provides optimal notice to the tribal electorate. This is a false assumption. The Court strongly urges the Cilice of the President to establish internal standard procedures to correct the obvious problem. The Court and other departments and officials greatly rely upon the newsletter for notifying the membership of important information (e.g., publication of Summonses ), and no valid explanation (or the continued use of an inaccurate and incomplete mailing list seemingly exists.

. The plaintiffs made a separate assertion that the map appearing on the published Official Notice of Election was illegible. The Court doubts whether the absence of District II county boundaries and names served to confound the electorate, but the Court does not need to fully address this issue due to the above finding.

. The Supreme Court earlier emphasized that it “is not bound by the federal or state laws as to standards of review'." Louella A. Kelty v. Jonette Pettibone and Ann Winneshiek, in their official capacities, SU 99-02 (HCN S.Ct., Sept. 24, 1999) at 2. The Supreme Court, therefore, has voluntarily adopted an abuse of discretion standard "to determine if an error of law was made by the lower court.” Daniel Youngthunder, Sr. v. Jonette Pettibone, Ann Winneshiek, Ona Garvin, Rainbow Casino Mgmt., SU 00-05 (HCN S.Ct., July 28, 2000) at 2; see also Coalition for a Fair Gov’t II v. Chloris A. Lowe, Jr. and Kathyleen Lone Tree-Whiterabbit, SU 96-02 (HCN S.Ct., July 1, 1996) at 7-8; and JoAnn Jones v. Ho-Chunk Nation Election Bd. and Chloris Lowe, CV 95-05 (HCN S.Ct., Aug. 15, 1995) at 3. Th Supreme Court accepted the follow ing definition of abuse of discretion: "any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to the matter submitted." Young-thunder, Sr., SU 00-05 at 2 quoting Black's Law Dictionary 11 (6th ed. 1990). Regarding findings of fact the Supreme Court has required an appellant to "demonstrate! ] clear error with respect to the factual findings of the trial court.” Coalition II, SU 96-02 at 8; but see Anna Rue Funmaker v. Kathryn Doornbos, SU 96-12 (HCN S.Ct., Mar. 25, 1997) at 1-2.